The first case is Spiegel v. Estee Lauder and we're ready to proceed. Good morning Your Honors. May it please the court, my name is Hugo Ortega and I represent the appellant in this matter, Teresa Spiegel. The appellant is a 71-year-old white cisgender woman who was employed by appellees from April 2019 as a store manager until November 14, 2022 when she was terminated by the appellees. As you are aware, the second amended complaint consisted of six causes of action. Hostile work environment under New York City human rights law, discrimination under section 1981, the negligent infliction of emotional distress, negligent hiring and supervision, the wage claims under the Fair Labor Standards Act, and retaliation under section 1981. For the reasons stated in Judge Cody's decision dated July 11, 2024, appellant's complaint was dismissed in its entirety. We respectfully submit that the lower court erred in its reasoning and decision justifying the dismissal of the complaint for the reasons which I will now address. However, I will be focusing my arguments on two specific causes of action, the hostile work environment and the wage claim. For the remaining causes of action, we will rely on the submissions previously made to this court. As correctly noted in the lower court's order, a complaint will survive a motion to dismiss under 12B6. Assume we know the legal standard for that. I'm sorry? Assume that we know the legal standard for a motion to dismiss. Okay, very good. Thank you. If you're looking first at the hostile work environment claim, why don't you focus on what allegations in the complaint support the inference that your client was discriminated against on the basis of her gender, race, gender identity, race, or age? Sure, so if I may, under the New York City human rights law, plaintiff alleging hostile work environment need only show that the employer treated her less well than other employees, at least for part of the discriminatory reasons. And where are the allegations in the complaint about that? The allegations are that she was treated differently and that she was singled out by her supervisors in a way that other employees were not. For example, she was disciplined for applying the rules that apply to every employee. There was an employee there by the name of Mr. Arteaga who was her subordinate. Mr. Arteaga consistently showed up to work wearing attire that was not consistent with the policy of the company. So the question is, is there somebody, I mean you could do it in different ways, but was there someone who was treated, I'm sorry, is there someone who was treated, who did the same thing as your client and was treated differently, who was of a different race or different gender? Is that identified in the complaint? And if so, where do you identify that in the complaint? Well, yes, she was, if I may, that's a good question, Your Honor. The appellant was treated differently because every time she attempted to discipline her subordinate, she was disciplining herself. When she sent them home because she was wearing black nail polish, for example, she was admonished and she was told not to do so. She was told to use the pronouns that this individual preferred to be called by, which she never objected to doing so. And when she questioned whether that was a policy that would apply to the entire company, she was told that it was not. It was a rule that applies specifically and singularly to her. You make allegations that she was not backed up in her attempts to supervise an employee, and the employee was late, but she wasn't backed up in her efforts to enforce the timeliness prohibitions. But what are the allegations that suggest that, you know, she may have been treated unfairly in that regard? But what are the allegations that she was being discriminated against on the basis of a protected characteristic? Because that's what makes this a complaint. Well, yes, and thank you for that. The allegations are that because of who she was, a female, an older woman, and the complainant in this case was a homosexual male in his 30s who clearly established early on his hatred for the plaintiff. As we cite in our brief, he left a book on her desk, how to be an anti-racist. He complained to his supervisors that Ms. Spiegel was being racist towards him because she was attempting to uphold the rules of the company. And so, taken as a whole, given that this is the case where it's in the very early stages of the case, we submit that the dismissal of the complaint, without having the opportunity to establish through discovery, the actual racial discrimination was improper and that the court should not have What is the racial discrimination? So in connection with that, for example, a subordinate providing a book, a subordinate saying certain things, what is the racial discrimination as to your client? Because it's not the subordinate who terminates her or engages in a hostile work environment. It's got to be some supervisor or some set of people around her who are her peers or above. But maybe I missed that. Well, I mean, if you look at the complaint as a whole, our position is that when you look at all of the acts of the employer, suggest that there was a racial animus of motivation towards the plaintiff. Our position is that we don't need to establish the actual acts at the time that the complaint is filed. The case law is clear that all we have to establish is that there's a temporary presumption, the temporary presumption of discriminatory motivation at that stage. And if we are able to get past that, then through discovery, we will be able to establish further. So you said that you wanted to focus on two issues during the oral argument, the latter of which were the labor, fair, the federal labor and state labor claims. Would you do that? I'm sorry? Would you do that? Would you focus on those two for now? The labor? Yes, yes. So on the wage violation claim, we submit that the lower court erred in dismissing that complaint because the case law is clear that when you're making a wage claim, for the most part, the plaintiff does not have the record necessary at the time of the pleading, the initial pleadings, to be specific as to the dates and the weeks and how many hours. So we submit that the pleadings, the second amendment complaint actually established the requisite to be able to proceed. But aren't the allegations here, you're correct that a plaintiff raising these types of claims isn't required to give highly detailed allegations. But here where the complaint just says regularly worked more than 40 hours, I mean, it doesn't indicate when she normally came in, when she normally left. It's as bare bones as it could be. And it is the second amended complaint. And on the face of it, how does this satisfy the pleading requirements? Well, that's a good question. Thank you, Your Honor. The reason we feel that way is because the case law is clear that the employee is not going to have the specific records that are in the possession of the employer. The employee is going to know this is the time I normally arrived at work. This is the time I left. That information is within the employee's knowledge, and we don't even have that. Well, we have that she worked a full-time 40 hours a week. That over the time period, the company was aware of the fact that she was coming in early. And the reason she- No, it's early. We don't have, I normally arrived at 9 o'clock. I was scheduled to leave at this time. We don't even have that. We just have that she regularly worked more than 40 hours a week. Well, with all the respect, Your Honor, I submit to you that at the initial pleadings, the- This is the second amended complaint. Wasn't this, maybe I'm mistaken, but was this not flagged at the time of the first, of course, I'm getting the sequence wrong here, but this is not the initial pleading. And so this lack of specificity and as to this, you've had an opportunity already to address that. We were as specific as we could be at the time of the pleadings, given the timeframe and the records that we had in our possession. Our argument is that that was sufficient to survive the motion to dismiss on the 12B-6, and that the court should have allowed for discovery to flush out the details of the nature of the underpayment to the plaintiff. She alleges that she started work-related tasks before the store opened, which could be before or after her start time. You don't- Right. So you don't say what those work-related tasks are. I guess my difficulty in looking at this complaint is it seems that there is more information in the plaintiff's possession that could have been used to flush out the bald assertion, she regularly worked more than 40 hours a week. So it's perplexing why it's not in the complaint. I would say this, that in our pleadings, we asserted that the plaintiff was ordered to go to the store and open it early for two reasons. One of them was once a week, the cleaning lady didn't have the keys to get in, so she would let her in. And her supervisor, Ms. Jacobson, was the one that instructed her to go every day. Now, as far as the specific task that she was conducting, I submit to you that the case does not require that kind of specificity and that the court should have allowed the case to proceed to discovery so that it can be flushed out. Thank you. Thank you. Good morning, Your Honors. Tanya Mistretta from Jackson-Lewis PC for defendants appellees, and may it please the court. Plaintiff appellant Teresa Spiegel has had three opportunities to state a plausible claim against the defendants. She has failed to do so three times. On appeal, plaintiff fails to present a legitimate basis to justify reversing the district court's decision granting defendant's motion to dismiss. Accordingly, we respectfully request that the court affirm the district court's ruling granting defendant's motion to dismiss plaintiff's of race discrimination, discrimination based on age and gender orientation, retaliation, claims of negligent infliction of emotional distress, negligent hiring and retention, and alleged unpaid overtime claims. Plaintiff Teresa Spiegel was employed by ELC Beauty LLC as a sales manager. While plaintiff purports to name additional entities as the plaintiff's employer, the complaint fails to state a plausible claim on this basis. In particular, the complaint does not to impute liability to the non-employing ELC entities, that is Estee Lauder Inc., Estee Lauder Companies Inc., and Estee Lauder International Inc. Additionally, plaintiff failed to address this issue on appeal and has effectively waived the argument. On this basis alone, the court may affirm dismissal of Estee Lauder Inc. and Estee Lauder International Inc. As a sales manager at ELC Beauty LLC's Frederick Mall addition to Parfum Boutique, plaintiff reported to the individual defendants Angelina Miller and Lucene Jacobs, and the plaintiff was additionally responsible for supervising employees at the boutique, including individual defendant Noe Arteaga. When you take the second amended complaint and you pull from it the repetitive, conclusory, legal assertions, the formulaic recitations of the elements of a cause of action, which are not afforded the presumption of truth on a motion to dismiss, as the court aptly noted, what you were left with is nothing but allegations of alleged unfair treatment. The plaintiff, in essence, argues that following defendant Arteaga's hire in October of 2021, that she was subjected to unfair criticism, unfair discipline, being singled out following Arteaga's complaints about the plaintiff, and ultimately received a final warning, culminating in the termination of her employment. These allegations do not state a plausible claim to relief under New York State human rights law, the New York City human rights law, or under Section 1981 for race discrimination. And in fact, when you look at the facts that are pled, they actually undermine any such claim. Here, not only do we not have a plausible inference of discrimination, we have facts that belie that argument. Indeed, if you look at the facts that are pled in the second amended complaint, it is apparent that each action taken with respect to the plaintiff's employment was motivated by her own conduct, that is, her misconduct towards the defendant Arteaga. At best, what plaintiff has argued here is that Arteaga accused her of discrimination. However, calling someone racist is not the same as discrimination on the basis of race. The court has had the opportunity to consider this issue before and has decidedly held it in Cooper versus Franklin Templeton investments. In that case, the plaintiff, Cooper, was recorded in Central Park, in which she stated to a black man that she was going to call the police and report that an African American man was threatening her life. This video was recorded and uploaded to social media, and the video went viral. Like the plaintiff here, the plaintiff's employer put the plaintiff on a suspension pending investigation, and the plaintiff in Cooper issued a public statement stating, we do not condone racism, we're doing an investigation, and ultimately they terminated the Cooper plaintiff's employment. Like the plaintiff here, Cooper asserted a claim of discrimination based on race and gender, and asserted claims under the New York State City Human Rights Law and Section 1981. In affirming dismissal of the Cooper plaintiff's complaint, this court held, while calling someone racist may indicate a strong dislike, that is not the same as discrimination based on race. And this was not the first instance in which this court held so. The court also held so in Marischiello versus the City of Buffalo Police Department, in which a plaintiff asserted a failure to promote claim on the basis that he had been accused of being racist. Again, calling someone racist is not the same as discrimination based on race. Since plaintiff did not address arguments with respect to the inadequacy of the retaliation claims and the negligence, infliction of emotional distress and negligent hiring and retention claims, unless there are any questions before the court, I'm happy to reserve and submit on the papers on those claims. It has been a fair labor standards claim. I mean, a plaintiff needs to provide some degree of specificity in her complaint as to the length and frequency of unpaid work, but we've said repeatedly, the employee doesn't need to keep records and doesn't need to plead hours with mathematical precision. So here she is saying she regularly worked over 40 hours and arrived before the store opened. Why isn't that enough? So mere general conclusory allegations of regularly working in excess of 40 have been held by this court to be nothing but... Well, no, no. So it's a little bit more than just regularly working. She specifically says she would arrive well before the start time to perform various work tasks before the store opened to the public. Arriving before her start time at the Greenwich Village store and working while she was not allowed to clock in. Why isn't that specific enough? And she, I mean, you can only say so much about the fact that you work at least 40 hours per week. And then the question always, at least after Herrera, is what else did you do to get you over the 40 hour hump? So the allegation with respect to the frequency at which she arrived to the store early allegedly is regularly. And this court has held that that is a general conclusory assertion and just a repetition of the FLSA regulations with respect to pleading the Klan. Additionally, I would note that the representations made before this court regarding the plaintiff arriving to work early at the direction of Defendant Jacobs... So if she had said every day, that would have been specific enough? What the court requires, what the FLSA and the New York Labor Law... Answer that question. If she had alleged every day, that would have been enough? It may have been because there needs to be at least a single week alleged in which the plaintiff has worked 40 hours in a week and some amount of time in excess of 40 hours a week. We do not have any of those allegations. And while she does not need to plead the Klan... So the difference is between the term regularly and every day, in your view? Well, I would submit that that's not the only argument, but in terms of pleading at least a given work week, then yes. The conclusory allegation of regularly does not meet the standard. Had she alleged perhaps in every week that she was employed and then provided additional detail regarding the nature of the tasks that she was performing, the frequency with which she was performing them, the amount of time, even an approximation as to how long it was taking for her to perform these tasks, then perhaps she may have been capable of stating a possible claim. But the standard is not what's possible, it is what's plausible. And the complaint here fails to provide those key factual allegations. This is more akin to the case... How about the term... I mean, I'm sorry to belabor this, but I'm reading from Herrera where we noted that the plaintiffs also frequently worked additional hours. Is that different from regularly? So the plaintiff in Herrera was very different. In Herrera, the case was one of misclassification. In that case, the plaintiff was an exempt employee who was alleging that they were misclassified as non-exempt. As an exempt employee, they alleged that their regular work schedule was already in excess of 40 hours. They then alleged with specific detail about the number of hours they spent pre-shift, working through lunches, post-shift, working through shipments. That level of detail in Herrera is far higher than the level of specificity here. And the plaintiff fails to provide any factual detail. As the court noted, this is the minimum bare bones allegations, conclusory allegations, not afforded the presumption of truth on a motion to dismiss. This is more akin to the allegations which this court rejected in Bonn-Whittingham v. Project OHR, in which allegations that an employee merely regularly worked more than 40 hours per week are legal conclusions, little more than a paraphrase of the statute, and standing alone cannot establish a plausible claim. Well, let's say that we just change regularly, building on what my colleague has suggested, to every day or most every day. She's also been alleged, she works more than 40 hours a week, most every day. She regularly arrives well before her start time to perform various work tasks. She's not permitted to clock in before her start time. And it's sort of, it is plausible that a store has an opening hour. There are certain things that have to be done before opening. And if she's arriving and not allowed to clock in, why isn't that enough? What more do we need? So if the plaintiff had not alleged regularly, but as Your Honor put it, every day, I arrived, right, that might satisfy the allegations of a given week. But we still need to have factual allegations regarding time in excess of 40 hours. Absent any information about the nature of the task she performed, the amount of time it took for her to perform these tasks, we have no real fact, no amount of specificity to put the employer on fair notice of what the claim is. So just to follow up, and again, I apologize for belaboring the point, but I'm trying to understand where you would ask us to draw the line. If the allegation had been that I opened up the store and I did specific tasks before my actual start time, that, in your view, would be enough? So if it was on, in this week, for example, at least in a single week, I worked in excess of 40 hours, I spent this amount of time performing pre-shift work, even if it's an approximation, an allegation sufficient to show that the plaintiff, in a given work week, worked in excess of 40 hours would be sufficient. That's the pleading standard in Lundy. And even in Lundy, the court considered the possibility that the plaintiffs had the ability to state a plausible claim. In Lundy, for example, two of the plaintiffs had alleged approximately 37 hours of work and then 12 and a half hours of additional shifts. And the court reasoned, perhaps if we presumed they worked through every lunch break of 30 minutes, they arrived to work every day pre-shift. It was possible. It was possible they could state a claim for relief. However, that's not the standard. That merely invites rank speculation. The standard is what is plausible. And the plaintiff fails to state a plausible claim to the Fair Labor Standards Act or the New York Labor Law. If there are no other questions regarding plaintiff's retaliation claims or negligence tort claims or no other questions regarding dismissal of plaintiffs. One interesting issue is whether, even in discovery, given the nature of the allegations, there would be any record of her coming in. But apparently someone let her in to the store. So throughout plaintiff's appeal, plaintiff repeatedly argues that discovery is needed here. There is no basis for this argument. Courts do not hesitate to dismiss claims when they lack plausibility. They should be exposed at the point of minimum expenditure of time and money by the parties and the court. Discovery is not going to make this plaintiff's case any stronger. I see my time is up if I can address this question before I conclude. The plaintiff doesn't need to plead mathematical precision, but she's had three opportunities to do so. Clearly, plaintiff was capable of drawing from her own memory, her own recollection, to provide some amount of specificity to support the claims. Her inability to do so after three attempts demonstrates that these claims are not plausible. Thank you, Your Honor, for these reasons. We respectfully request that the court affirm the district court's ruling dismissing the complaint with prejudice. Thank you. We'll hear rebuttal. Just very briefly, Your Honor, on the labor issue, I would reiterate that the FLSA and the New York Labor Law does not require the plaintiff to provide precise calculations of unpaid overtime in their complaints. They only need to allege that worked overtime for which they were not compensated, which plaintiff did. If you look at the amended complaint, the second amended complaint paragraphs, I'm not going to read them to you because you have them, but paragraph six, seven, and eight specifically address the issues with sufficient specificity needed to be able to survive a motion to dismiss. For those reasons, I ask that the court remand it back to the law court for further discovery on the issue of the labor law. Thank you. Thank you both, and we'll take the matter under advisement.